IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:06CV197 |
| | ) | |
| $147,900.00 in U.S. CURRENCY | ) | |
| | ) | |
| Defendant. | ) | |


<u>MEMORANDUM OPINION</u>

BEATY, Chief District Judge.

This civil forfeiture action is an in rem proceeding brought pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(c) regarding $147,900.00 in U.S. Currency ("Defendant Currency"). This matter comes before the Court pursuant to Claimant Tony Lynn Bailey's ("Claimant") Motion to Dismiss and for Summary Judgment [Document #24], and Plaintiff United States of America's ("Plaintiff" or "Government") Motion for Summary Judgment [Document #26]. The Government has filed a response to Claimant's Motion to Dismiss and for Summary Judgment. The issues here have been fully briefed and the Court will address the merits of Claimant's motion to dismiss and the parties' motions for summary judgment.[1] For

_____

[1] Under Local Rule 7.3(k), a motion that is uncontested may be granted without further notice. The Court notes, however, that although Claimant failed to file a response to the Government's Motion for Summary Judgment, Claimant has filed a Motion for Summary Judgment which contests the factual and legal contentions of the Government's motion. Therefore, the Court will treat both motions for summary judgment as having been contested and consider the merits of both, given that in any event, the Court must determine whether based on the facts presented either moving party is entitled to a judgment as a matter of law. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) (even where motion

the reasons that follow, Claimant's Motion to Dismiss and for Summary Judgment is denied, and Plaintiff's Motion for Summary Judgment is granted.

## I.    BACKGROUND

The property at issue in this civil forfeiture case is $147,900.00 in U.S. Currency. Defendant Currency was seized on December 12, 2005, by officers from the Davidson County Sheriff's Office pursuant to a search warrant in connection with an investigation into illegal drug trafficking involving the alleged sale and distribution of marijuana and prescription pain and nerve medication from Claimant's residence at 278 Brookside Drive, Lexington, North Carolina. The following facts regarding the seizure of Defendant Currency and the purported source of the funds were presented by the Government through evidence including: (1) a Declaration of ATF Task Force Agent Tim Tilley; (2) a Deposition of Claimant; (3) Claimant's Responses to the Government's Interrogatories; (3) Photocopies of the seized Defendant Currency; (4) a Declaration of Davidson County Sheriff's Office Detective Jeff Jones; and (5) a Declaration of David A. Duttenhofer, Jr., Vice President, the Federal Reserve Bank of New York.

In 2004 and 2005, the Davidson County Sheriff's Office received information from confidential reliable informants and other citizens that Claimant was selling and distributing marijuana and prescription pain medication from his residence. During this two-year time period, a confidential informant provided information to Detective Jeff Jones that he had purchased prescription drugs from Claimant on four or five occasions and had given Claimant stolen merchandise in exchange for the prescription pills. Pursuant to this information, on

uncontested, the moving party still must show that the facts entitle him to a judgment as a matter of law).

2

December 12, 2005, the same confidential informant performed a controlled buy of Hydrocodone pills from Claimant at Claimant's residence under the supervision and observation of detectives from the Davidson County Sheriff's Office. Based on all the information gathered during the investigation regarding Claimant's alleged drug trafficking, on December 12, 2005, Detective Jones applied for and received a state search warrant. The Davidson County Sheriff's Office executed the search warrant the same day. The search produced two firearms from the main bedroom, approximately fifteen pills that were not in a prescription bottle from under the sink in the bathroom, some of which were identical to the pills the informant purchased earlier that day, $9,000.00 in U.S. Currency from a dresser drawer, six firearms from a gun cabinet in the den, and several items matching the description of stolen property which the confidential informant claimed that he had given Claimant in exchange for the prescription pills. Upon searching an outbuilding to the residence, the detectives discovered a large green safe for which Claimant provided the detectives with the combination. In the safe, the detectives found seven firearms and a smaller safe that required a key. Claimant provided the key to Detective Jones to open the safe. However, Prior to opening the safe, Claimant told Detective Jones "please don't take my money, because my Grandpa gave it to me when he died." Claimant later clarified that his grandfather had given the money to Claimant's father, who in turn gave it to Claimant just prior to his father's death. Claimant then told Detective Jones that the safe contained $145,000.00 and that he had not added any money to that amount since receiving the inheritance from his father in 1994. Detective Jones opened the safe and discovered fourteen rubber-banded stacks of $100 bills.

3

Claimant was then interviewed by the detectives upon waiving his Miranda rights and produced a written signed statement. In his statement, Claimant said that he sold pills to pay for his bills and medication. With regard to his income, Claimant stated that he performed odd jobs to make money, that he had been unemployed for the last two years, that the most money he had ever earned in a year was about $12,000.00, and the last time that he filed income taxes was approximately 1995. Claimant further stated that the $145,000.00 found in the safe was money given to him by his father in 1993 or 1994. The detectives, however, observed that many of the bills were dated "2000." The currency was then seized under suspicion that Claimant was lying about the source of the funds in an attempt to avoid having the money seized. The day after Defendant Currency was seized, it was taken to Lexington State Bank for an official count. The count yielded a total of $147,900.00 in U.S. Currency. Prior to depositing the seized Defendant Currency, detectives from the Davidson County Sheriff's Office photocopied all of the bills, which were all in the denomination of $100. A review of the photocopied bills reveals that just over half of the bills feature large-face portraits, and are from the 1996 series of $100 banknotes which where were first released into circulation in March 1996.

Claimant was involved in a previous forfeiture proceeding in 2001, prior to the events set out above. With respect to that previous proceeding, on May 20, 2001, officers with the Davidson County Sheriff's Office conducted a controlled buy of prescription drugs from Claimant at the same residence. Following this 2001 controlled buy, officers obtained and executed a search warrant at Claimant's residence and seized ten firearms, twenty-five units of Alprazolam, 2,128 grams of marijuana, boxes of plastic bags, a set of digital scales, and

4

$33,100.00 in U.S. Currency. Claimant was arrested on this occasion and charged with various state narcotics related offenses. The Government filed a forfeiture action with respect to the $33,100.00 in U.S. Currency seized. In that instance, Claimant contended that the currency seized consisted of money earned from prior employment, inheritances from his father and aunt, and money belonging to his then live-in girlfriend. That action was later settled based upon a distribution of $20,051.50 to Baptist Hospital for Claimant's outstanding medical bills, $5,694.00 to Claimant's live-in girlfriend who claimed that some of the funds represented tax refunds belonging to her, $395.00 in costs relating to the action, and the remaining $6,959.50 to Claimant.

On the basis of all of these alleged facts, on February 28, 2006, the Government initially filed this civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6) against Defendant Currency on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance or that it constituted proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act. The Complaint also alleged that Defendant Currency constituted or was derived from proceeds traceable to an offense constituting specified unlawful activity, or a conspiracy to commit such offense pursuant to 18 U.S.C. § 981(a)(1)(C). Upon filing the Complaint, the Government also filed the required Warrant for Arrest of Defendant Currency, however, that warrant was denied by the Court. The Government later filed an Amended Complaint and Warrant for Arrest on November 11, 2006 after further investigation into the previously filed 2001 forfeiture action involving Claimant mentioned above. The Government also obtained additional information from the agency that seized

5

Defendant Currency in this case. The Amended Complaint was filed on the same grounds as the initial Complaint, but incorporated additional factual information relative to the investigating detectives' suspicions regarding the source of the currency, information about the photocopied bills revealing the newer large-face portrait design, and information related to Claimant's 2001 civil forfeiture action noted above. An arrest warrant and Notice in Rem was subsequently issued for Defendant Currency on November 16, 2006. Claimant was served on November 22, 2006. Claimant then filed, in this action, a claim to Defendant Currency and an Answer to the Amended Complaint. Following discovery, Claimant filed a Motion to Dismiss and for Summary Judgment. The Government thereafter filed a Motion for Summary Judgment. The Court will now discuss in turn Claimant's Motion to Dismiss and the parties' Motions for Summary Judgment.

## II.    DISCUSSION

### A.    Claimant's Motion to Dismiss

Claimant's motion sets out three alternative grounds for dismissal of the Government's Amended Complaint in this case. Claimant contends that the Government's Amended Complaint fails to meet the pleading requirements of Supplemental Rule E of the Federal Rules of Civil Procedure, that the Government failed to give Claimant timely notice of this action, and that the delay between seizure of Defendant Currency and the commencement of this civil forfeiture action violated his Fifth Amendment right to due process. The Court will address each of Claimant's arguments in turn.

###### i.    Pleading Requirements of Fed.R.Civ.P. Supplemental Rule E

On November 11, 2006, the Government filed an Amended Complaint seeking forfeiture of Defendant Currency on the ground that it was the proceeds of illicit drug trafficking.  The Amended Complaint incorporated an affidavit, executed by ATF Task Force Agent Timothy Lynn Tilley, setting forth the facts recounted above in support of forfeiture of Defendant Currency.  Claimant now moves to dismiss the Government's Amended Complaint arguing that the Amended Complaint fails to set forth facts to satisfy the pleading standards of Rule E(2)(a). The Court will therefore address whether the Government has satisfied Rule E(2)(a)'s particularity requirement so as to preclude dismissal.

"A civil forfeiture complaint against property allegedly connected to drug trafficking must meet the particularity in pleading requirement of Supplemental Rule E(2)(a)."  United States v. Mondragon, 313 F.3d 862, 864 (4th Cir. 2002) (citing 21 U.S.C. § 881(b), (d); United States v. One Parcel of Real Property, 921 F.2d 370, 373-74 (1st Cir. 1990)).  Rule E(2)(a) provides that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."  In evaluating the particularity requirement of Rule E, the Fourth Circuit has adopted the "general standard that a complaint under Rule E(2)(a) must allege sufficient facts to support a reasonable belief that the property is subject to forfeiture."  Mondragon, 313 F.3d at 865.  Moreover, "Rule E(2)(a) needs little interpretation.  It is plainly written and means precisely what it says."  Id.  Therefore, courts should "evaluate the government's complaint in light of the language of the rule, keeping

7

in mind that the complaint must at bottom allege facts sufficient to support a reasonable belief that the property is subject to forfeiture." Id. at 865-66.

In this case, the Government's Amended Complaint alleges that Defendant Currency is the proceeds of illicit drug trafficking. The factual allegations of the Amended Complaint include, inter alia, the following: (1) the amount of currency seized; (2) the manner in which the currency was packaged; (3) that the currency was seized pursuant to a search warrant based on an investigation into drug trafficking; (4) where the officers found the currency; (5) by whom the currency was seized; (6) that Claimant stated that he had not worked during the last two years, and had not filed income taxes since 1995; (7) that Claimant stated that the most he made in a year was $12,000.00; (8) that Claimant stated that the source of about $145,000.00 of the currency seized was a cash inheritance from his Grandfather who saved it during the Depression and then passed the money to Claimant's father, who in turn passed it on to Claimant; (9) that Claimant stated that he did not add any money to the original inheritance received in 1994; (10) that many of the bills were dated in the 1990s and 2000; (11) that over half of the bills carried features that were first introduced in 1996; (12) that Claimant admitted to selling prescription pain pills that came "from the streets" from out of his home; and, (13) that in 2001, pursuant to an investigation into drug trafficking, Claimant's home was searched and firearms, drug paraphernalia, 2,128 grams of marijuana, and $33,100.00 in U.S. Currency was seized. The Court finds that all of these facts as alleged by the Government sufficiently state the circumstances from which the claim arises, such that on these facts alone, Claimant would be able to commence an investigation of the facts and to frame a response. See Mondragon, 313 F.3d at

8

866 (finding that the complaint satisfied the particularity requirement on facts similar to those alleged in the present case). Thus, the Court finds that the Amended Complaint satisfies the particularity requirement of Rule E.

Having made this finding, the Court is nevertheless required to consider whether the Amended Complaint alleges "facts sufficient to support a reasonable belief that the property is subject to forfeiture." Mondragon, 313 F.3d at 865-66. In this regard the Court notes that the Amended Complaint alleges that $147,900.00 in $100 bills was found in numerous rubber-banded stacks which were hidden in a dresser drawer and a safe in an outbuilding on Claimant's property, that Claimant was and had been unemployed for some time, that Claimant was previously involved in trafficking of controlled substances, and that Claimant's explanation as to the source of Defendant Currency was, in part, directly contradicted by the Government's evidence. The Court finds that considering all of these facts as alleged, the Amended Complaint permits a "reasonable belief" for pleading purposes that Defendant Currency was the proceeds of drug trafficking and is therefore subject to forfeiture. Id. at 865 (noting that although the Government's burden of proof at trial is the "preponderance of the evidence" standard, the standard for the initial pleading stage is a "reasonable belief" that the property is subject to forfeiture). Therefore, because the Amended Complaint satisfies the particularity requirement, and the allegations set forth a reasonable belief that Defendant Currency was proceeds of drug trafficking, the Court concludes that the Amended Complaint states circumstances giving rise to the forfeiture claim with sufficient particularity that Claimant could have commenced a meaningful investigation of the facts and drafted a responsive pleading as required by Rule

9

E(2)(a).[2]   Having concluded that the Government has satisfied Rule E(2)(a)'s pleading requirement in this case, the Court will deny Claimant's motion to dismiss on this ground.

### ii.    Timely Notice of Civil Forfeiture Action

In the alternative, Claimant contends that pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983(a)(1)(F), the Government's failure to give Claimant timely notice of this action warrants a dismissal of the Amended Complaint.  In determining whether the Government met this notice requirement, the Court will address the applicability of the CAFRA provision identified by Claimant.

At the outset, the Court notes that Claimant bases his argument on the statutory language of 18 U.S.C. § 983(a)(1).  However, by its terms, § 983(a)(1) establishes procedures and deadlines for notice that apply only to nonjudicial civil forfeiture proceedings, and does not apply to judicial forfeiture proceedings, such as the instant civil forfeiture action before the Court.[3]  See, e.g., United States v. 1,866.75 Board Feet and 11 Doors and Casings, 587 F. Supp. 2d 740, 751-52 (E.D. Va. 2008) (noting that §§ 983(a)(1) and (3) refer explicitly to administrative nonjudicial civil forfeiture proceedings); United States v. $4,629.00 in U.S. Currency, 359 F. Supp. 2d 504,

---

[2] To the extent that Claimant contends that the Government has failed to satisfy the provisions of Federal Rule of Civil Procedure Supplemental Rule G(2), which became effective after the Amended Complaint was filed in this case, the Court finds that, in any event, the Government has satisfied the provisions of Rule G(2) based on the Court's discussion above.

[3] Specifically, § 983 provides in pertinent part that the notice requirements set out in (a)(1)(A) apply to "any nonjudicial civil forfeiture proceeding"; that §§ 983(a)(1)(B), (C), and (D) refer to additional considerations and responsibilities for "seizing agency" officials and "seizing agencies conducting nonjudicial forfeitures under this section"; and § 983(a)(1)(F) refers to failure to send notice in accordance with subparagraph (A), which as previously noted, only applies to nonjudicial forfeiture proceedings.

508 (W.D. Va. 2005) (finding § 983(a)(1) applicable to notice requirements for DEA nonjudicial proceeding). Therefore, to the extent that Claimant contends that the Amended Complaint should be dismissed because the Government failed to comply with the notice requirements of § 983(a)(1), the Court concludes that Claimant's arguments have no basis in law, and therefore Claimant's motion to dismiss on this ground will be denied.

### iii. Delay Between Seizure and Institution of Forfeiture Proceedings

Claimant nevertheless raises the alternative contention that the eleven-month delay between the time Defendant Property was seized and Claimant's receipt of notice of this action violated his Fifth Amendment due process rights of notice and an opportunity to be heard. As a result of this alleged Constitutional violation, Claimant contends that the action should be dismissed. Specifically, Claimant contends that the Government offered no explanation for what he argues is a considerable delay. Claimant further asserts that the deprivation of the substantial sum of Defendant Currency from Claimant has resulted in a significant burden to him. The Government, however, contends that it promptly filed the initial Complaint in this case and that the delay between the seizure and the Amended Complaint, and notice thereof, was reasonable under the circumstances in this matter. In evaluating whether Claimant's due process rights were violated in this instance, the Court turns to the applicable legal standard.

"An unreasonable delay in instituting a forfeiture proceeding may constitute a violation of due process requiring the return of the property." United States v. Turner, 933 F.2d 240, 246 (4th Cir. 1991) (citing United States v. $8,850.00 in U.S. Currency, 461 U.S. 555, 569, 103 S. Ct. 2005, 2015, 76 L. Ed. 2d 143 (1983)). In order to determine whether a delay in filing a forfeiture

action is reasonable, the Supreme Court has adopted the four-factor balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). See $8,850.00 in U.S. Currency, 461 U.S. at 564-65, 103 S. Ct. at 2012. The four factors identified are: (1) the length of the delay; (2) the reason the government assigns to justify the delay; (3) the claimant's assertion of his rights to a judicial hearing; and, (4) the extent to which the claimant has been prejudiced by the delay. Id. The factors are to be balanced and no one factor "is a necessary or sufficient condition for finding unreasonable delay." Id. 461 U.S. at 565, 103 S. Ct. at 2012.

The first factor is the length of the delay. "Little can be said on when a delay becomes presumptively improper, for the determination necessarily depends on the facts of the particular case." $8,850.00 in U.S. Currency, 461 U.S. at 565, 103 S. Ct. at 2012 (regarding a delay of eighteen months in that instance as "quite significant"); see also United States v. $23,407.69 in U.S. Currency, 715 F.2d 162, 165 (5th Cir. 1983) (finding unreasonable a delay of thirteen months where "for the first six months period nothing was done by the government"). In this case, Defendant Currency was seized on December 12, 2005, and the Government first instituted proceedings on February 28, 2006. However, the Amended Complaint, arrest warrant and subsequent notice were not received by Claimant until November 2006, eleven months after the seizure. This eleven-month delay is substantially less than what the Supreme Court found to be a "quite significant" delay, nevertheless, the length of the delay alone should not be considered without also considering the attendant circumstances. Therefore, the Court will consider this eleven-month length of delay when examining the other factors of the balancing test.

The second factor is the reason the government assigns for the delay. In this case, the Government offers that it first instituted proceedings within ninety days of the seizure by filing its initial Complaint on February 28, 2006. The Government, however, concedes that the Warrant for Arrest filed with its Complaint was initially denied, prompting the Government to continue its investigation. The Government contends, however, that it then sought additional information from law enforcement and from a closed forfeiture file in order to include that information in the Amended Complaint, which it filed on November 11, 2006. The Court finds that it is not unreasonable for the Government to conduct further investigation given that it promptly instituted proceedings in the first instance, and its application for a warrant for arrest of Defendant Currency was denied due to insufficient evidence. See $8,850.00 in U.S. Currency, 461 U.S. at 564, 103 S. Ct. at 2012 (noting that while there is value in "allowing the Government time to pursue its investigation" in a civil forfeiture, such delay must nevertheless be reasonable); see also United States v. Perez, 1994 WL 318760, at *3 (4th Cir. Jul. 1, 1994) (finding that investigation involving the coordination of local and federal law enforcement agencies provides an adequate justification for delay). The Court finds that this factor does not weigh in favor of an unreasonable delay in this case given that the Government attributes the eight-month delay between its promptly instituted initial Complaint and the filing of the Amended Complaint to the time needed to conduct further investigation.

The third factor is the claimant's assertion of his rights to a judicial hearing. In this case, Claimant did not file any claim for Defendant Currency until December 18, 2006, just over one year after the property was seized. The claim also was not filed until after the Government filed

its Amended Complaint and an arrest warrant was issued for the property. In light of these facts, the delay that Claimant protests in this case does not appear unreasonable, especially given that Claimant could have exercised his right to file a claim on the property at any point much earlier in the process.

Finally, the fourth factor to examine is whether the claimant has been prejudiced by the delay. The claimant must show that the delay resulted in prejudice to his ability to defend against the action. See $8,850.00 in U.S. Currency, 461 U.S. at 569, 103 S. Ct. at 2014. In this case, Claimant argues that being without Defendant Currency has been a financial burden, but he does not demonstrate or allege any prejudice to his ability to defend against this civil forfeiture action based on the delay. In fact, Claimant, through this motion and other pleadings, has demonstrated that he has been capable thus far of defending this action. Moreover, Claimant does not allege that the delay has hampered his ability to present a defense on the merits by, for example, a loss of witnesses or other important evidence. As a result, the Court finds that the fourth factor does not warrant a finding of unreasonable delay in this case.

Having found that the balance of the factors weighs in favor of a finding that the eleven-month delay in this case was not unreasonable, the Court concludes that the delay in this instance does not constitute a violation of Claimant's due process rights. Therefore, the Court will deny Claimant's motion to dismiss on this ground. Moreover, having finally concluded that none of the three arguments asserted by Claimant as grounds for dismissal are meritorious, the Court will deny Claimant's Motion to Dismiss and therefore, will turn to a discussion of the merits of the parties' motions for summary judgment.

## B. Claimant and Government's Motions for Summary Judgment

Summary judgment is appropriate when an examination of the materials properly before the Court reveals that "there is no genuine issue as to any material fact . . . and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 65(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When ruling on a summary judgment motion, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." Bailey v. Blue Cross & Blue Shield, 67 F.3d 53, 56 (4th Cir. 1995). As a result, the Court will only enter summary judgment in favor of the moving party when "the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances." Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967)).

The Government's civil forfeiture action against the Defendant Currency in the instant case was brought pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). Title 21 U.S.C. § 881(a)(6) authorizes the forfeiture of any currency received in exchange for controlled substances, all proceeds traceable to drug sales, and all currency used to commit or to facilitate the commission of a felony in violation of the Controlled Substances Act.[4] Title 18 U.S.C.

---

[4] Title 21 U.S.C. § 881(a)(6) provides, in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

15

§ 981(a)(1)(C) authorizes forfeiture of property which constitutes or is derived from proceeds traceable to any offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7).[5]  In a civil forfeiture action, pursuant to CAFRA the Government has the burden of establishing by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1).  "Under the preponderance of the evidence standard, the relevant facts must be shown to be more likely true than not."  United States v. Gibson, 2009 WL 180284, at *1 (4th Cir. Jan. 27, 2009) (citing United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004)).  Moreover, where the Government contends that property was used to commit or facilitate the commission of a criminal offense, such as illicit drug trafficking, the Government must establish, by a preponderance of the evidence, that a "substantial connection" exists between the property to be forfeited and the criminal activity prohibited by statute.  See 18 U.S.C. § 983(c)(3).  Circumstantial evidence is sufficient to establish that property is proceeds

---

. . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter . . .

[5] Title 18 U.S.C. § 981(a)(1)(C) provides, in pertinent part:
(a)(1) The following property is subject to forfeiture to the United States:

. . .

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in [18 U.S.C. § 1956(c)(7)]), or a conspiracy to commit such offense.

traceable to illegal drug trafficking such that a "[d]irect connection between the property subject to seizure and the illegal activity that renders the items forfeitable need not be shown." United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir. 1990) (quotation and citation omitted).[6] Rather, factors that weigh in favor of property being either a direct product of illicit drug activity or traceable to the activity as proceeds include "where a defendant's verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker." Id. (quotation and citation omitted). Moreover, the Fourth Circuit has cautioned that district courts are to apply the evidentiary standard to the facts in their totality and to avoid "dissect[ing] strands of evidence as discrete and disconnected occurrences." Id. at 1115, 1116-18 (reversing district court judgment which found no substantial connection between the currency and illegal activity, noting that while the several factors in isolation might not have been conclusive of illegal activity, when viewed in the totality, the factors presented in the case demonstrated that the government had met its burden).

In this case, the Government argues that the facts, taken as a whole, prove by a

---

[6] Thomas was decided ten years before CAFRA, and in the years since the statute's enactment, the Fourth Circuit has not explicitly reaffirmed the notion that circumstantial evidence is sufficient to satisfy the Government's burden in a civil forfeiture case. Nevertheless, while CAFRA raised the quantum of proof required in a forfeiture action, it did not purport to alter the way in which a court evaluates that proof. This Court, however, notes that with the higher standard, any evidence, whether circumstantial evidence or otherwise, must show a substantial connection by a preponderance of the evidence, rather than by mere probable cause. Therefore, the Court will apply the same factors and methods of evaluating the evidence as noted in Thomas and other pre-CAFRA cases, but will do so in light of the Government's heightened evidentiary burden. See also United States v. Funds in the Amount of $30,670.00, 403 F.3d 448, 469 (7th Cir. 2005) (finding that while the government's burden may have increased in the wake of CAFRA, factors that weighed in favor of forfeiture in the past, such as viewing the evidence in the aggregate rather than piecemeal, continue to do so now).

17

preponderance of the evidence that Defendant Currency is substantially connected to prohibited criminal activity, that is, that Defendant Currency constitutes proceeds traceable to illicit drug trafficking. Specifically, the Government argues that evidence of (1) Claimant's substantial involvement in the sale of controlled substances for several years, and, (2) Claimant's lack of reported income sufficient to explain the large amount of currency seized, when viewed as a whole, rises to a preponderance of evidence in favor of forfeiture.

With regard to Claimant's involvement in the sale of controlled substances for several years, the Government offers evidence that prior to the instant circumstance, in May 2001, Claimant was involved in the activity of selling prescription pain pills to an informant from his home. As a result, Claimant's home was searched and officers discovered and seized twenty-five Alprazolam pills, nearly five pounds of marijuana, digital scales, boxes of plastic bags, ten firearms, and $33,100.00 in U.S. Currency. Claimant therefore was arrested and charged with various state narcotics related offenses. The Government further offers evidence that for a period of two years, in 2004 and 2005, the Davidson County Sheriff's Office received additional reports from informants and citizens that Claimant was selling and distributing marijuana and prescription pain and nerve medication from his home. An informant also revealed that he traded stolen merchandise to Claimant for Hydrocodone pills. After the officers organized another controlled purchase of prescription pills from Claimant, Defendant Currency in the instant case was seized along with weapons and the stolen goods which the informant claimed he had previously traded for drugs. The Government further proffered evidence that Claimant, in his written statement, admitted to selling prescription pain and nerve pills which he got "from

18

the streets."

Claimant responds to the Government's evidence with the contention that the Government has not met its burden in that it has not offered any evidence of a long running, large scale drug operation carried out by Claimant, nor has the Government offered any evidence to show that Defendant Currency is tied to a specific drug transaction. However, a direct connection between the Defendant Currency and a specific illegal drug transaction, or a direct connection to a specific larger drug operation need not be shown to establish that property is proceeds traceable to illegal drug trafficking. See Thomas, 913 F.2d at 1114 ("[d]irect connection between the property subject to seizure and the illegal activity that renders the items forfeitable need not be shown"). As previously noted, circumstantial evidence, as is being offered by the Government in this case, is sufficient to establish that property is proceeds traceable to illegal drug trafficking. As such, courts are required to view all of the evidence in its totality. See id. (noting that district courts are to avoid "dissect[ing] strands of evidence as discrete and disconnected occurrences"). In this regard, the Court finds that all of the facts offered by the Government when viewed as a whole demonstrate significant evidence of Claimant's substantial involvement in the sale of controlled substances for several years. Claimant nevertheless contends that although he has been arrested for state narcotics offenses, he has never been the subject of an indictment or prosecution involving a large scale drug operation. However, the fact that Claimant has never been federally indicted or prosecuted for a drug offense is of little consequence in light of all of the other factors in this case which the Court can consider to determine if Defendant Currency is traceable to illicit drug trafficking.

See United States v. $10,700.00 in U.S. Currency, 258 F.3d 215, 224 n.6 (3d Cir. 2001) ("[F]orfeiture under § 881(a) is not conditioned upon an arrest or conviction for a drug offense.").

With regard to Claimant's lack of sufficient legitimate income to explain the large accumulation of cash in this instance, the Government's evidence is that Claimant maintains a small home business in which he has occasionally, over approximately the last ten years, repaired vehicles and bought vehicles to repair and then resell. For the last ten years, this business was Claimant's only source of revenue from which Claimant admits he garnered "only a negligible amount of income." Moreover, Claimant's business has never been licensed, and Claimant has never kept any record of business transactions. In addition, Claimant was last employed at a wage-paying job in 1996 (for which Claimant contends that he never made more than $12,000.00 a year), has not filed taxes since 1995 or 1996, and has had no financial accounts from 1997 until the date of seizure of Defendant Currency in 2005. Claimant does not dispute these facts regarding his low level of earned income over the last ten years, nor his absence of financial records. In view of the undisputed evidence that Claimant has not worked since 1996, has made little income from his vehicle repair business, has no financial records and no financial accounts, and given Claimant's involvement in the sale of controlled substances for several years, the Court finds that viewing the evidence as a whole, the Government has demonstrated that there is no genuine issue of material fact that Defendant Currency is subject to forfeiture as proceeds of illicit drug trafficking, in that the Government has established that a substantial connection exists between Defendant Currency and illegal drug trafficking. See Thomas, 913 F.2d at 1114

(finding that "where a defendant's verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker" the factors weigh in favor of cash being proceeds traceable to illegal drug activity); see also United States v. $215,300.00 U.S. Currency, 882 F.2d 417, 419 (9th Cir. 1989) (finding that possession of unusually large amounts of cash may be circumstantial evidence of drug trafficking); United States v. $2,500.00 in U.S. Currency, 689 F.2d 10, 16 (2nd Cir. 1982) (finding that $2,500.00 in cash is "substantially greater than is commonly kept in residential premises by law-abiding wage earners").

        With the Government having met its burden, the claimant must "come forward with specific facts showing that there is a genuine issue for trial." United States v. $95,945.18 in U.S. Currency, 913 F.2d 1106, 1111 (4th Cir. 1990) (internal citations omitted). In this case, Claimant initially contends that Defendant Currency was inherited by him upon his father's death in May 1994. Claimant further contends that he buried the currency in his backyard, retrieving it only occasionally for the sole purpose of counting it and replacing old rubber-bands. Claimant also asserts that the cash received from his father was never taken to a bank to be counted or replaced, and was never otherwise exchanged for any other currency, either prior to its burial or anytime thereafter. Claimant suggests that Defendant Currency seized by law enforcement in 2005 was comprised of the same original denomination of bills given to him by his father. The Government, however, argues that Claimant's explanation as to the legitimacy of Defendant Currency is insufficient to create a genuine issue of fact to overcome the Government's showing that the property is forfeitable. The Government contends that Claimant's explanation is

directly contradicted by evidence that just over half of the seized bills are $100 banknotes first issued in March 1996 that were not in circulation at the time of Claimant's father's death.[7] Thus, the Court finds that the source of a substantial portion of the funds seized could not have been an inheritance from his father as Claimant contends. Claimant nevertheless maintains that the accumulated cash is that which he obtained from his father and that he never exchanged the funds nor removed them once they were buried.[8] The only other corroboration that Claimant offers as to the legitimate nature of Defendant Currency is deposition testimony of his girlfriend

---

[7] Although $9,000.00 of the $147,900.00 of Defendant Currency was found in the residence and later co-mingled with the balance of the funds that Claimant contends is his inheritance, the large-face bills comprise $75,100.00 of the total sum, which is well over the $9,000.00 found in Claimant's home. As a result, even if the Court were to disregard the $9,000.00 of Defendant Currency found in Claimant's home, at least 661 of the large-face bills, constituting $66,100.00, comes from what Claimant contends is his pre-1996 inheritance. This fact alone casts serious doubt on Claimant's purported explanation as to the source of Defendant Currency.

[8] Claimant, in his response to interrogatories and in his deposition, has provided two other inconsistent explanations for $9,000.00 of Defendant Currency that was found in Claimant's dresser drawer. Claimant contends that these funds were either proceeds from a sale of a '66 Mustang from his car-repair business or proceeds from the sale of real property in Davidson County in 1999 or 2000. Claimant contends that he sold the Mustang to a person named Tony, however, concedes that he cannot remember Tony's last name, does not know of his address, and cannot recall whether the sale of the Mustang took place over a couple of weeks or a couple of days prior to the date of the seizure of Defendant Currency. In addition, Claimant offers no other record of the sale of any real property. The Court finds that Claimant's contentions that this $9,000.00 constitutes legitimate business proceeds is belied by his inability to produce any business or tax records regarding the source of this income. See United States v. $141,770.00 in U.S. Currency, 157 F.3d 600, 604 (8th Cir. 1998). Moreover, given that Claimant's contentions as to the legitimacy of the source of this $9,000.00 are uncorroborated, the Court finds that Claimant has not presented evidence sufficient to establish a genuine issue of material fact that Defendant Currency is not forfeitable as property that is connected to illegal drug trafficking. See United States v. $10,000.00 in U.S. Currency, 348 F. Supp. 2d 612, 617 (M.D.N.C. 2004) ("[M]ere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture.").

who agrees that Defendant Currency was an inheritance received from Claimant's father that was buried in Claimant's backyard. Other than his girlfriend's statement, Claimant concedes that he has no other documentation to support a legitimate source for his accumulation of a large amount of cash at his residence. Considering all of the evidence presented by the parties, the Court, therefore, finds that these bald assertions by Claimant and his girlfriend are insufficient to create a genuine issue of material fact in this case, and Claimant has failed to present sufficient evidence to establish any basis on which to find that there is a legitimate source for his accumulation of Defendant Currency. Having concluded that the Government has presented evidence to establish as a matter of law that a substantial connection exists between Defendant Currency and illicit drug trafficking, and having further concluded that Claimant has failed to present any genuine issue of material fact or any basis to establish an otherwise legitimate source for Defendant Currency, the Court finds that the Government is entitled to a forfeiture of Defendant Currency as a matter of law. As a result, the Court will grant the Government's Motion for Summary Judgment. Likewise, because the record and the Court's conclusions establish that the facts as presented by the parties present no genuine issues for trial, the Court will deny Claimant's Motion for Summary Judgment.

## III. CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that Claimant's Motion to Dismiss and for Summary Judgment [Document #24] is DENIED. IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [Document #26] is GRANTED.

23

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 31st day of March, 2009.

_United States District Court Judge_